UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

BRIAN ROFFE PROFIT SHARING PLAN,
JACOB SALZMANN and DENNIS
PALKON, Individually and On Behalf of All
Others Similarly Situated,

                    Plaintiffs,

    vs.

FACEBOOK, INC., MARK ZUCKERBERG,
DAVID A. EBERSMAN, DAVID M.
SPILLANE, MARC L. ANDREESSEN,
ERSKINE B. BOWLES, JAMES W.
BREYER, DONALD E. GRAHAM, REED
HASTINGS, PETER A. THIEL, MORGAN
STANLEY & CO. LLC, J.P. MORGAN
SECURITIES LLC, GOLDMAN, SACHS &
CO., MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED and
BARCLAYS CAPITAL INC.,

                    Defendants.

——————————————————— x

Civil Action No.

## 12 CV    4081

<u>CLASS ACTION</u>

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS



RECEIVED
MAY 23 2012
U.S.D.C. S.D. N.Y.
CASHIERS

<u>DEMAND FOR JURY TRIAL</u>

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all those who purchased the common stock of Facebook, Inc. ("Facebook") pursuant and/or traceable to the Company's May 18, 2012 initial public offering (the "IPO" or the "Offering") seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the Securities Act.

3.     This Court has jurisdiction of this action pursuant to §22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

4.     Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b) and (c).  The acts and conduct complained of herein occurred in substantial part in this District and the Underwriter Defendants (defined below) maintain their principal places of business in this District.

5.     In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ National Securities Market ("NASDAQ").

## PARTIES

6.     (a)     Plaintiff Brian Roffe Profit Sharing Plan purchased Facebook common stock, as set forth in the certification attached hereto and incorporated herein by reference, directly in the IPO, and was damaged thereby.

       (b)     Plaintiff Jacob Salzmann purchased Facebook common stock, as set forth in the certification attached hereto and incorporated herein by reference, and was damaged thereby.

(c)      Plaintiff Dennis Palkon purchased Facebook common stock, as set forth in the certification attached hereto and incorporated herein by reference, directly in the IPO, and was damaged thereby.

7.      Defendant Facebook maintains its principal executive offices at 1601 Willow Road, Menlo Park, California 94025.  The Company operates as a social networking company worldwide.

8.      (a)      Defendant Mark Zuckerberg ("Zuckerberg") is the founder of the Company and was, at all relevant times, Chairman of the Board of Directors (the "Board") and Chief Executive Officer of Facebook.  Zuckerberg signed the Registration Statement.

(b)      Defendant David A. Ebersman ("Ebersman") is, and was at all relevant times, Chief Financial Officer ("CFO") of Facebook.  Defendant Ebersman signed the Registration Statement.

(c)      Defendant David M. Spillane ("Spillane") is, and was at all relevant times, Chief Accounting Officer of Facebook.  Defendant Spillane signed the Registration Statement.

(d)      Defendant Marc L. Andreessen ("Andreessen") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Andreessen signed the Registration Statement.

(e)      Defendant Erskine B. Bowles ("Bowles") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Bowles signed the Registration Statement.

(f)      Defendant James W. Breyer ("Breyer") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Breyer signed the Registration Statement.

(g)      Defendant Donald E. Graham ("Graham") is, and was at all relevant times, a member of the Board of Facebook.  Defendant Graham signed the Registration Statement.

(h)     Defendant Reed Hastings ("Hastings") is, and was at all relevant times, a member of the Board of Facebook. Defendant Hastings signed the Registration Statement.

(i)     Defendant Peter A. Thiel ("Thiel") is, and was at all relevant times, a member of the Board of Facebook. Defendant Thiel signed the Registration Statement.

(j)     The Defendants listed above at ¶8(a)-(i) are collectively referred to herein as the "Individual Defendants."

9.     By reason of their management positions and their ability to make public statements in the name of Facebook, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) Facebook to engage in the conduct complained of herein.

10.     Defendants Morgan Stanley & Co. LLC ("Morgan Stanley"), J.P. Morgan Securities LLC ("J.P. Morgan"), Goldman, Sachs & Co. ("Goldman Sachs"), Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") and Barclays Capital Inc. ("Barclays") served as lead underwriters of the IPO. Morgan Stanley, J.P. Morgan, Goldman Sachs, Merrill Lynch and Barclays are collectively referred to herein as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

11.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all those who purchased the common stock of Facebook pursuant and/or traceable to the Company's IPO. Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

12.     The members of the Class are so numerous that joinder of all members is impracticable.  Facebook sold more than 421 million shares of common stock in the IPO.  The precise number of Class members is unknown to plaintiffs at this time but is believed to be in the thousands.  In addition, the names and addresses of the Class members can be ascertained from the books and records of Facebook or its transfer agent or the underwriters to the IPO.  Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

13.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

14.     Plaintiffs' claims are typical of the claims of the other members of the Class because plaintiffs and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants.  Plaintiffs do not have any interests antagonistic to, or in conflict with, the Class.

15.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

16.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether the Prospectus and Registration Statement issued by defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Facebook and its business; and

(c)     the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

17.     Defendant Facebook operates as a social networking company worldwide.  The Company: (i) builds tools that enable users to connect, share, discover, and communicate with each other; (ii) enables developers to build social applications on Facebook or to integrate their websites with Facebook; and (iii) offers products that enable advertisers and marketers to engage with its users. As of February 2, 2012, it had 845 million monthly users and 443 million daily users.

18.     On or about May 16, 2012, Facebook filed with the Securities and Exchange Commission ("SEC") a Form S-1/A Registration Statement (the "Registration Statement"), for the IPO.

19.     On or about May 18, 2012, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and 421 million shares of Facebook common stock were sold to the public at $38 per share, thereby valuing the total size of the IPO at more than $16 billion.

20.     The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

21.     With regard to the Company's expectations for the second quarter of 2012, the Registration Statement and Prospectus stated, in pertinent part, as follows:

> Based upon our experience in the second quarter of 2012 to date, the trend we saw in the first quarter of [daily active users] increasing more rapidly than the increase in number of ads delivered has continued. We believe this trend is driven in part by increased usage of facebook on mobile devices where we have only recently begun showing an immaterial number of sponsored stories in News Feed, and in part due to certain pages having fewer ads per page as a result of product decisions.

22.     In describing the risks related to Facebook's business and industry, the Registration Statement purported to warn that the Company's revenues could be negatively affected by the rate of growth in mobile users of its site or app.  The Registration Statement and Prospectus stated in pertinent part as follows:

> ***Growth in use of Facebook through our mobile products, where our ability to monetize is unproven, as a substitute for use on personal computers may negatively affect our revenue and financial results.***
>
> We had 488 million [monthly active users] who used facebook mobile products in March 2012. While most of our mobile users also access Facebook through personal computers, we anticipate that the rate of growth in mobile usage will exceed the growth in usage through personal computers for the foreseeable future, in part due to our focus on developing mobile products to encourage mobile usage of Facebook. We have historically not shown ads to users accessing Facebook through mobile apps or our mobile website. In March 2012, we began to include sponsored stories in users' mobile News Feeds. However, we do not currently directly generate any meaningful revenue from the use of Facebook mobile products, and our ability to do so successfully is unproven. We believe this increased usage of Facebook on mobile devices has contributed to the recent trend of our daily active users (DAUs) increasing more rapidly than the increase in the number of ads delivered. If users increasingly access Facebook mobile products as a substitute for access through personal computers, and if we are unable to successfully implement monetization strategies for our mobile users, or if we incur excessive expenses in this effort, our financial performance and ability to grow revenue would be negatively affected.

23.     The Registration Statement and Prospectus also purported to warn investors that the Company's revenues from advertising could be adversely affected by, among other things, the "increased user access to and engagement with facebook" through mobile devices.  In that regard, the Registration Statement and Prospectus stated, in pertinent part, as follows:

***We generate a substantial majority of our revenue from advertising. The loss of advertisers, or reduction in spending by advertisers with Facebook, could seriously harm our business.***

The substantial majority of our revenue is currently generated from third parties advertising on facebook. In 2009, 2010, and 2011 and the first quarter of 2011 and 2012, advertising accounted for 98%, 95%, 85%, 87%, and 82%, respectively, of our revenue. As is common in the industry, our advertisers typically do not have long-term advertising commitments with us. Many of our advertisers spend only a relatively small portion of their overall advertising budget with us. In addition, advertisers may view some of our products, such as sponsored stories and ads with social context, as experimental and unproven. Advertisers will not continue to do business with us, or they will reduce the prices they are willing to pay to advertise with us, if we do not deliver ads and other commercial content in an effective manner, or if they do not believe that their investment in advertising with us will generate a competitive return relative to other alternatives. Our advertising revenue could be adversely affected by a number of other factors, including:

- decreases in user engagement, including time spent on facebook;

- increased user access to and engagement with facebook through our mobile products, where we do not currently directly generate meaningful revenue, particularly to the extent that mobile engagement is substituted for engagement with Facebook on personal computers where we monetize usage by displaying ads and other commercial content;

- product changes or inventory management decisions we may make that reduce the size, frequency, or relative prominence of ads and other commercial content displayed on facebook;

- our inability to improve our analytics and measurement solutions that demonstrate the value of our ads and other commercial content;

- decisions by advertisers to use our free products, such as facebook Pages, instead of advertising on Facebook;

- loss of advertising market share to our competitors;

- adverse legal developments relating to advertising, including legislative and regulatory developments and developments in litigation;

- adverse media reports or other negative publicity involving us, our Platform developers, or other companies in our industry;

- our inability to create new products that sustain or increase the value of our ads and other commercial content;

- the degree to which users opt out of social ads or otherwise limit the potential audience of commercial content;

- changes in the way online advertising is priced;

- the impact of new technologies that could block or obscure the display of our ads and other commercial content; and

- the impact of macroeconomic conditions and conditions in the advertising industry in general.

The occurrence of any of these or other factors could result in a reduction in demand for our ads and other commercial content, which may reduce the prices we receive for our ads and other commercial content, or cause advertisers to stop advertising with us altogether, either of which would negatively affect our revenue and financial results.

24.     The statements referenced above in ¶¶ 21-23 were untrue statements of material fact. The true facts at the time of the IPO were that Facebook was then experiencing a severe and pronounced reduction in revenue growth due to an increase of users of its Facebook app or website through mobile devices rather than a traditional PC such that the Company told the Underwriter Defendants to materially lower their revenue forecasts for 2012. And, defendants failed to disclose that during the roadshow conducted in connection with the IPO, certain of the Underwriter Defendants reduced their second quarter and full year 2012 performance estimates for Facebook, which revisions were material information which was not shared with all Facebook investors, but rather, was selectively disclosed by defendants to certain preferred investors and omitted from the Registration Statement and/or Prospectus.

25.     On May 19, 2012, in an article entitled "Morgan Stanley Was A Control-Freak On Facebook IPO – And It May Have Royally Screwed Itself," *Reuters* reported that "***Facebook . . . altered its guidance for research earnings last week, during the road show, a rare and disruptive move*.*"*

26.     On May 22, 2012, in an article entitled "Insight: Morgan Stanley cut Facebook estimates just before IPO," *Reuters* reported that that Facebook's lead underwriters, Morgan Stanley, JP Morgan and Goldman Sachs, all cut their earnings forecasts for the Company in the middle of the IPO roadshow and that only a handful of preferred investor clients were told the news of the reduction.  In that regard, the article stated, in pertinent part, as follows:

> In the run-up to Facebook's $16 billion IPO, Morgan Stanley, the lead underwriter on the deal, unexpectedly delivered some negative news to major clients: The bank's consumer Internet analyst, Scott Devitt, was reducing his revenue forecasts for the company.
>
> The sudden caution very close to the huge initial public offering, and while an investor roadshow was underway, was a big shock to some, said two investors who were advised of the revised forecast.
>
> They say it may have contributed to the weak performance of Facebook shares, which sank on Monday - their second day of trading - to end 10 percent below the IPO price. The $38 per share IPO price valued Facebook at $104 billion.
>
> The change in Morgan Stanley's estimates came on the heels of Facebook's filing of an amended prospectus with the U.S. Securities and Exchange Commission (SEC), in which the company expressed caution about revenue growth due to a rapid shift by users to mobile devices. Mobile advertising to date is less lucrative than advertising on a desktop.
>
> "This was done during the roadshow - I've never seen that before in 10 years," said a source at a mutual fund firm who was among those called by Morgan Stanley.
>
> JPMorgan Chase and Goldman Sachs, which were also major underwriters on the IPO but had lesser roles than Morgan Stanley, also revised their estimates in response to Facebook's May 9 SEC filing, according to sources familiar with the situation.

Morgan Stanley declined to comment and Devitt did not return a phone message seeking comment. JPMorgan and Goldman both declined to comment.

Typically, the underwriter of an IPO wants to paint as positive a picture as possible for prospective investors. Investment bank analysts, on the other hand, are required to operate independently of the bankers and salesmen who are marketing stocks - that was stipulated in a settlement by major banks with regulators following a scandal over tainted stock research during the dotcom boom.

The people familiar with the revised Morgan Stanley projections said Devitt cut his revenue estimate for the current second quarter significantly, and also cut his full-year 2012 revenue forecast. Devitt's precise estimates could not be immediately verified.

"That deceleration freaked a lot of people out," said one of the investors.

Scott Sweet, senior managing partner at the research firm IPO Boutique, said he was also aware of the reduced estimates.

"They definitely lowered their numbers and there was some concern about that," he said. "My biggest hedge fund client told me they lowered their numbers right around mid-roadshow."

That client, he said, still bought the issue but "flipped his IPO allocation and went short on the first day."

"VERY UNUSUAL"

Sweet said analysts at firms that are not underwriting IPOs often change forecasts at such times. However, he said it is unusual for analysts at lead underwriters to make such changes so close to the IPO.

"That would be very, very unusual for a book runner to do that," he said.

The lower revenue projection came shortly before the IPO was priced at $38 a share, the high end of an already upwardly revised projected range of $34-$38, and before Facebook increased the number of shares being sold by 25 percent.

The much-anticipated IPO has performed far below expectations, with the shares barely staying above the $38 offer price on their Friday debut and then plunging on Monday.

Companies do not make their own financial forecasts prior to an IPO, and underwriters are generally barred from issuing recommendations on the stock until 40 days after it begins trading. Analysts often rely on guidance from the company in building their forecasts, but companies doing IPOs are not permitted to give out material information that is not available to all investors.

- 10 -

Institutions and major clients generally enjoy quick access to investment bank research, while retail clients in many cases only get it later. It is unclear whether Morgan Stanley only told its top clients about the revised view or spread the word more broadly. The firm declined to comment when asked who was told about the research.

"It's very rare to cut forecasts in the middle of the IPO process," said an official with a hedge fund firm who received a call from Morgan Stanley about the revision.

27.    As of the date of the filing of this complaint, the 421 million shares of Facebook common stock sold in the IPO are trading at approximately $31 per share, or $7 per share below the price where plaintiffs and the Class purchased $16 billion worth of Facebook stock while defendants pocketed billions of dollars.  Plaintiffs and the Class have suffered losses of more than $2.5 billion since the IPO.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

28.    Plaintiffs repeat and reallege each and every allegation contained above.

29.    This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

30.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

31.    Facebook is the registrant for the IPO.   The defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

32.    As issuer of the common stock, Facebook is strictly liable to plaintiffs and the Class for the misstatements and omissions.

33.     None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

34.     Plaintiffs acquired common stock of Facebook pursuant and/or traceable to the Registration Statement.

35.     The value of Facebook common stock has declined substantially and plaintiffs and the Class have sustained damages as a result of defendants' violations.

36.     Less than one week has elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiffs filed this Complaint.  Likewise, less than one week has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiffs filed this Complaint.

### COUNT II

#### Violations of Section 12(a)(2) of the Securities Act
#### Against All Defendants

37.     Plaintiffs repeat and reallege each and every allegation set forth above.

38.     This Count is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class.

39.     Defendants were sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the Prospectus and Registration Statement.

40.     As set forth above, the Prospectus and Registration Statement contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.  Defendants' actions of solicitation included preparing the inaccurate and misleading Prospectus and participating in efforts to market the IPO to investors.

41.     Defendants owed to the purchasers of Facebook common stock, including plaintiffs and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus and Registration Statement to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact. Defendants, in the exercise of reasonable care, should have known that the Prospectus and Registration Statement contained misstatements and omissions of material fact.

42.     Plaintiffs and the other members of the Class purchased or otherwise acquired Facebook common stock pursuant to the Prospectus and Registration Statement, and neither plaintiffs nor the other Class members knew, or in the exercise of reasonable diligence could have known, of the untruths, inaccuracies and omissions contained in the Prospectus and Registration Statement.

43.     Plaintiffs, individually and on behalf of the Class, hereby offer to tender to defendants those shares of common stock that plaintiffs and the other Class members continue to own, in return for the consideration paid for those shares together with interest thereon.  Class members who have sold their shares are entitled to rescissory damages.

## COUNT III

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

44.     Plaintiffs repeat and reallege each and every allegation contained above.

45.     This Count is brought pursuant to §15 of the Securities Act against the Individual Defendants.

46.     Each of the Individual Defendants was a control person of Facebook by virtue of his position as a director and/or senior officer of Facebook.  The Individual Defendants each had a series

of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Facebook.

47.     Each of the Individual Defendants was a culpable participant in the violation of §11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment, as follows:

A.     declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.     awarding plaintiffs and other members of the Class damages together with interest thereon;

C.     awarding plaintiffs and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements;

D.     awarding plaintiffs and other members of the Class rescission on their §12(a)(2) claims; and

E.     awarding plaintiffs and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED:  May 23, 2012

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.

SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ABRAHAM, FRUCHTER & TWERSKY LLP
JACK FRUCHTER
One Penn Plaza, Suite 2805
New York, NY  10119
Telephone:  212/279-5050
212/279-3655 (fax)

LAW OFFICES BERNARD M.
  GROSS, P.C.
DEBORAH R. GROSS
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600
215/561-3000 (fax)

- 15 -

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
JOSEPH M. PROFY
JAMES M. FICARO
22 Cassatt Avenue
Berwyn, PA  19312
Telephone:  610/225-2677
610/408-8062 (fax)

Attorneys for Plaintiffs

## CERTIFICATION OF BRIAN ROFFE PROFIT SHARING PLAN
## IN SUPPORT OF CLASS ACTION COMPLAINT

Brian Roffe Profit Sharing Plan ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2.      Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff purchased 200 shares of Facebook, Inc. in its initial Public Offering at $38 per share.

5.      In the past three years, plaintiff has not served, nor sought to serve, as a representative party on behalf of a class in an action filed under the federal securities laws.

6.      Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 22nd day of May, 2012.

BRIAN ROFFE PROFIT SHARING PLAN

LAW OFFICES BERNARD M. GROSS, P.C.

**CERTIFICATION OF Jacob Salzmann**

1.    I, Jacob Salzmann, have reviewed the Complaint and have authorized the filing of same;

2.    I did not purchase the common stock of Facebook at the direction of plaintiff's counsel or in order to participate in any private action arising under this title of the federal securities laws;

3.    I am willing to serve as class representative and provide testimony at deposition and trial if necessary;

4.    I purchased shares pursuant to or traceable to the initial public offering of Facebook.   My transactions in the common stock of Facebook consisted of the following:

| Date | Purchase(s) or Sales(s) | Amount | Price |
|------|-------------------------|--------|-------|
| 05-18-12 | $123,678.08 | 2961 SHARES | @ $41.766 |

5.    During the previous three years, I have not moved to be appointed or been a lead plaintiff in any securities fraud class action.

6.    I will not accept any payment for serving as a class representative beyond my pro rata share of any recovery, except as ordered or approved by the Court with respect to an award for reasonable costs and expenses (including lost wages).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this  22ND day of   MAY , 2012, at  BLUE BELL, PA  .(city/state)

_Jacob a. Salzmann DDS_
(name/signature)
JACOB A. SALZMANN

## CERTIFICATION

I, Dennis Palkon, ("Plaintiff") declare, as to the claims asserted under the federal securities laws that

1.      Plaintiff has reviewed the complaint and authorizes its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      Plaintiff's purchase and sale transaction(s) in the Facebook, Inc. (NASDAQ: FB) security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought | Sold | Date | Price per share |
|---|---|---|---|---|---|
| Common | 1,800 | B | | 5/18/2012 | $38.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below_____.

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __2.2__ day of __MAy__, 2012.

_Dennis Palkon_
Dennis Palkon