UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

IN RE FACEBOOK, INC., IPO SECURITIES AND
DERIVATIVE LITIGATION,                              OPINION & ORDER
                                                    MDL No. 12-2389

----------------------------------------X

Case Relates to:

NO. 12-CV-4081  NO. 12-CV-4763
NO. 12-CV-4099  NO. 12-CV-4777
NO. 12-CV-4131  NO. 12-CV-5511
NO. 12-CV-4150  NO. 12-CV-7542
NO. 12-CV-4157  NO. 12-CV-7543
NO. 12-CV-4184  NO. 12-CV-7544
NO. 12-CV-4194  NO. 12-CV-7545
NO. 12-CV-4215  NO. 12-CV-7546
NO. 12-CV-4252  NO. 12-CV-7547
NO. 12-CV-4291  NO. 12-CV-7548
NO. 12-CV-4312  NO. 12-CV-7550
NO. 12-CV-4332  NO. 12-CV-7551
NO. 12-CV-4360  NO. 12-CV-7552
NO. 12-CV-4362  NO. 12-CV-7586
NO. 12-CV-4551  NO. 12-CV-7587
NO. 12-CV-4648



A P P E A R A N C E S :

       Attorneys for Plaintiffs
       Lawrence Corneck and Eugene Stricker

       HARWOOD FEFFER LLP
       488 Madison Avenue
       New York, NY 10022
       By:  Joel C. Feffer, Esq.
           Samuel K. Rosen, Esq.

       LAW OFFICES OF JAMES V. BASHIAN, P.C.
       500 Fifth Avenue
       New York, NY 10110
       By:  James V. Bashian, Esq.

1

Attorneys for the Underwriter Defendants
DAVIS POLK & WARDELL LLP
450 Lexington Avenue
New York, NY 10017
By:  James P. Rouhandeh, Esq.
     Charles S. Duggan, Esq.
     Andrew Ditchfield, Esq.


Attorneys for the Facebook Defendants
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
By:  Andrew B. Clubok, Esq.
     Brant Warren Bishop, Esq.


WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
By:  Richard D. Bernstein, Esq.
     Todd G. Cosenza, Esq.


Attorneys for the Lead Plaintiffs

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY  10019
By:  Max W. Berger, Esq.
     Steven B. Singer, Esq.
     John J. Rizio-Hamilton

LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
By:  Thomas A. Dubbs, Esq.
     James W. Johnson, Esq.
     Louis Gottlieb, Esq.

**Sweet, D.J.**

Plaintiffs Lawrence Corneck and Eugene Stricker (the "Exchange Act Plaintiffs") have moved to sever their actions, Civil Actions Nos. 12 Civ. 4215 and 12 Civ. 4663, pursuant to Rule 21 of the Federal Rules of Civil Procedure.  They also seek the consolidation of their actions, appointment as the lead plaintiffs in the newly consolidated action, and the appointment of their selection of counsel for their class.

Defendants Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC and Goldman, Sachs & Co. (collectively, the "Lead Underwriters Defendants"); defendants Facebook, Inc. ("Facebook"), Mark Zuckerberg, David A. Ebersman, David M. Spillane, Marc L. Andreessen, Erskine B. Bowles, James W. Breyer, Donald E. Graham, Reed Hastings and Peter A. Thiel (together with the Lead Underwriter Defendants, "Defendants"); and lead plaintiffs the North Carolina Department of State Treasurer on behalf of the North Carolina Retirement Systems, Banyan Capital Master Fund Ltd., Arkansas Teacher Retirement System, and the Fresno County Employees' Retirement Association (collectively, the "Lead Plaintiffs") oppose the Exchange Act Plaintiffs' motion.

Upon the facts and conclusions set for the below, the motion is denied.

## I. Prior Proceedings and Facts

The facts and prior proceedings underlying this action are set out in In re Facebook IPO Secs. & Derivative Litig., 12 MDL No. 2389, 288 F.R.D. 26 (S.D.N.Y. 2012), familiarity with which is assumed.  Accordingly, only facts relevant to this action will be provided below.

On December 6, 2012, this Court consolidated thirty-one putative shareholder class actions asserting securities law claims arising from Facebook's initial public offering (the "IPO"), including actions asserting claims under the Securities Act of 1933 (the "Securities Act") and actions filed by the Exchange Act Plaintiffs asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act").  See In re Facebook, 288 F.R.D. at 36.

Twenty-nine of these putative class actions asserted claims under Sections 11, 12(a)(2) and 15 of the Securities Act against Facebook, certain of its senior executives and directors and the underwriters for the IPO.  The remaining two actions

asserted insider-trading claims against the Lead Underwriter
Defendants under Section 20A of the Securities Exchange Act.  At
that time, the Exchange Act Plaintiffs argued that the two
Exchange Act claims should not be consolidated and that they
should be permitted to bring their claims in a separate class
action. (See Dkt. Nos. 7 and 24 filed in No. 12 Civ. 4215).

After considering the parties' arguments, the Court
ordered the consolidation of all the class actions asserting
federal securities law claims, including the Securities Act and
Exchange Act cases, and appointed the Lead Plaintiffs to direct
the prosecution of the single consolidated class proceeding, in
accordance with the Private Securities Litigation Reform Act
("PSLRA") (the "Consolidated Securities Action").  In re
Facebook, 288 F.R.D. at 36, 41.  Specifically, the Court
reasoned that both sets of claims "involve putative class
actions that seek relief on behalf of similar classes, asserted
against some of the same defendants, arising out of the same
series of events, and assert claims under federal securities
laws." Id. at 35.  Thus, the Court held that there was no
reason to allow two separate class action to proceed under
different leadership structures, explaining that "[t]o reject
consolidation would unnecessarily create two distinct and
parallel securities litigation cases with different plaintiffs

5

and different leadership." Id. at 35-36.

On February 28, 2013, the Lead Plaintiffs filed a consolidated class action complaint (the "Consolidated Complaint"). (Dkt. No. 71). The Consolidated Complaint asserts claims under the Securities Act only.

On April 16, 2013, the Exchange Act Plaintiffs filed the instant motion seeking to sever their actions from the Consolidated Securities Action. The Exchange Act Plaintiffs also seek to assert the Exchange Act claims in a separate class action for which they should be appointed lead plaintiffs. The motion was heard and marked fully submitted on May 29, 2013.

## II.  **The Applicable Standard**

Rule 21 of the Federal Rules of Civil Procedure permits a court to "sever any claim against a party." Fed. R. Civ. P. 21. "The decision whether to grant a several motion is committed to the sound discretion of the trial court." State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir. 1988); accord Wausau Bus. Inc. Co. v. Turner Constr. Co., 204 F.R.D. 248, 250 (S.D.N.Y. 2001). "Courts may order a Rule 21 severance when it will serve the ends of justice and further the

prompt and efficient disposition of litigation." T.S.I. 27,
inc. v. Berman Enters. Inc., 115 F.R.D. 252, 254 (S.D.N.Y.
1987); see also In re Methyl Tertiary Butyl Ether Prods. Liab.
Litig., 247 F.R.D. 420, 427 (S.D.N.Y. 2007) ("Severing the
claims of the non-State plaintiffs is warranted due to
principles of judicial efficiency and fundamental fairness; it
facilitates the settlement of the claims by non-State
plaintiffs, serves judicial economy, and avoids prejudicing the
defendants who properly removed the claims of the non-State
plaintiffs.").

## III. **Discussion**

        The Exchange Act Plaintiffs contend that the Lead
Plaintiffs' decision to assert only Securities Act claims in the
Consolidated Securities Action failed to comply with "the plain
language of this Court's order that they were to be included."
(Pl. Memo. at 1).  They also maintain that the Lead Plaintiffs'
failure to include the Exchange Act claims effectively severs
the common issues of law nexus between the Consolidated
Complaint and the Exchange Act Plaintiffs' complaints.

        The Defendants and Lead Plaintiffs, on the other hand,
contend that no mandate was issued by this Court directing the

Exchange Act claims to be included in the Consolidated Complaint.  They aver that the Lead Plaintiffs appropriately exercised their decision-making authority as vested by the PSLRA, which gives the court-appointed lead plaintiffs the sole authority to make strategic decisions on behalf of the class.

To begin with, while the Exchange Act Plaintiffs contend that the "plain language" of this Court's consolidation order states that their claims "were to be included" in any consolidation complaint, the Court held that the decision to bring those claims were solely within Lead Plaintiffs' authority.  Specifically, the Court held that "the determination of which claims to assert in the consolidated complaint will be determined by the Court-appointed lead plaintiff, who is charged with acting in the best interest of all class members."  In re Facebook, 288 F.R.D. at 36 (citing to In re Gen. Elec. Sec. Litig., No. 09 Civ. 1951(DC), 2009 WL 2259502, at *3 (S.D.N.Y. July 29, 2009) (noting that the lead plaintiff could resolve any difference in an action through the filing of a consolidated complaint and preserve "the tone and direction of the lawsuit.").  Thus, there was no mandate by this Court to include the Exchange Act claims in the Consolidated Complaint.

Consistent with this Court's holding, courts in this

Circuit have consistently held that a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class.  The Second Circuit has held that the PSLRA's lead plaintiff provisions are a mandate by Congress to vest the lead plaintiff with authority "to exercise control over the litigation as a whole." Hevesi v. Citigroup, Inc., 366 F.3d 70, 83 n.13 (2d Cir. 2004).  Thus, "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff - namely to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." Id. (citing to In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 123 (S.D.N.Y. 2002) (stating that "[t]he only other possibility - that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action - has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA.").

In addition, the long history of the Bank of America litigation and the decisions by the Honorable Denny Chin and the Honorable P. Kevin Castel are particularly instructive to the instant case.  In In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig., No. 09 MD 2058, 2010 WL 1438980, at *1-2 (S.D.N.Y. Apr.

9

9, 2010) (hereinafter "BoA I"), the lead plaintiffs initially

elected to sue only on behalf of stock holders, and not to bring

claims on behalf of options holders and bondholders.  See id.

After the lead plaintiffs filed their consolidated complaint,

several individual plaintiffs sought to file separate class

actions asserting claims on behalf of options holders and

bondholders.  Id.  Relying on Hevesi, Judge Chin held that these

plaintiffs could not maintain separate class actions because:

> [I]n a securities class action, a lead plaintiff is
> empowered to control the management of the litigation
> as a whole, and it is within the lead plaintiff's
> authority to decide what claims to assert on behalf of
> the class . . . Lead Plaintiffs have the authority to
> decide what claims to assert on behalf of securities
> holders.  Permitting other plaintiffs to bring
> additional class actions now, with additional lead
> plaintiffs and additional lead counsel, would
> interfere with Lead Plaintiffs' ability to authorize
> and manage the Consolidated Securities Actions.

Id. at *2.


        After Judge Chin's decision, the lead plaintiffs later

included certain options claims in an amended consolidated

complaint, but the claims were largely dismissed on standing

grounds.  See In re Bank of Am. Corp. Sec., Deriv. & ERISA

Litig., No. 09 MD 2058, 2011 WL 3211472, at *14 (S.D.N.Y. July

29, 2011).  Lead plaintiffs then decided, for strategic reasons,

not to add a named plaintiff with standing to bring the options
claims that had been dismissed, thus finally determining not to
assert those options claims. Another plaintiff then sought to
bring a separate class action on behalf of the options holders
whose claims were no longer being prosecuted, arguing that he
should now be permitted to do so because lead plaintiffs had
decided not to pursue those claims. See In re Bank of Am. Corp.
Sec., Deriv. & ERISA Litig., No. 09 MD 2058, 2011 WL 4538428
(S.D.N.Y. Sept. 29, 2011) (hereinafter "BoA II").


        Judge Castel, to whom the case had been transferred
after Judge Chin's appointment to the Second Circuit, also
rejected the options plaintiff's attempt to bring a separate
class action. As the court held, "[s]uch tactical decisions
[about which claims to assert] are the prerogative of a lead
plaintiff. . . . Such a decision is within the lead plaintiff's
prerogative 'to exercise control over the litigation as a
whole.'" Id. at *1 (quoting Hevesi, 366 F.3d at 82, n.13).
Judge Castel further reasoned that if the options holders were
permitted to bring a separate class action, such a result would
not only contravene the PSLRA, but lead to a landscape in which:

        . . . any consolidated securities fraud class action
    [would] carry with it a corresponding ecosystem of
    separate class actions seeking relief on behalf of

                              11

securities holders whose claims vary from the lead
plaintiffs. [The options plaintiff's] approach invites
the type of lawyer-driven litigation that the PSLRA
seeks to avoid, and would likely promote near-endless
skirmishes about securities holders who fall outside a
class definition . . . .

*Id.* at *2.


Following the BoA II opinion, the options plaintiff

sought leave to file an interlocutory appeal.  See In re Bank of

Am. Corp. Sec., Deriv. & ERISA Litig., No. 09 MD 2058, 2012 WL

1308993 (S.D.N.Y. Apr. 16, 2012).  Judge Castel denied this

request on the ground that it is settled law that a litigant may

not assert a separate class action to bring claims that the lead

plaintiff has determined not to pursue on a class basis.  Id. at

*2.


Similarly, if the Exchange Act Plaintiffs are allowed

to bring their own separate class action for their claims, it

would render the PSLRA's lead plaintiff provisions meaningless.

See BoA II, 2011 WL 4528428, at *2 (stating that such a result

would lead to the "type of lawyer-driven litigation that the

PSLRA seeks to avoid.").  The Exchange Act Plaintiffs contend

that the Bank of America decisions "are irrelevant to the issue

of severance because the consolidation there involved actions

having common questions of law and fact."  (Pl. Reply at 5).

12

However, this Court has already ruled that "the similarities
between [the Exchange Act] claims and the Securities Act claims
warrant consolidation." In re Facebook, 288 F.R.D. at 35.
These similarities include putative class actions that "seek
relief on behalf of similar classes, asserted against some of
the same defendants, arising out of the same series of events,
and assert claims under federal securities laws." Id.

The Exchange Act Plaintiffs also rely on a recent
decision by the Honorable John G. Koeltl in In re New Oriental
Edu. & Technology Group Sec. Litig., --- F.R.D. ---, 2013 WL
1875102 (S.D.N.Y. May 6, 2013). Specifically, the Exchange Act
Plaintiffs highlight that Judge Koeltl distinguished the Bank of
America decisions, in part, by noting that "[t]he court in BoA
II, like the court in BoA I, did not consider the statute of
limitations repercussions for the affected plaintiffs." Id. at
*4. They contend that "[t]he prejudicial effect of the running
of the statute of limitations is the main reason why" the motion
to sever was granted.

In New Oriental, three competing lead plaintiff
movants stipulated to consolidate their securities action and
appoint one movant, MPS, as lead plaintiff. Id. at *1. One of
the movants, an options investor, agreed to the stipulation only

on the condition that MPS include options investors in the class asserted in the consolidated complaint.  Id.  Even though MPS had explicitly agreed to include options investors, its consolidated complaint excluded them from the class.  As a result, the options investor moved to sever his action and assert claims on behalf of a separate class of options investors.

Contrary to the Exchange Act Plaintiffs' assertion, for several reasons, New Oriental is inapposite.  First, the Court severed the options claims specifically because MPS induced the options plaintiff to "stipulate[] to a lead plaintiff based on representations that the options class would be included in the action."  Id. at *4.  Here, in contrast, Lead Plaintiffs never induced the Exchange Act Plaintiffs to stipulate to the Lead Plaintiffs' appointment based on a representation that they would bring Exchange Act claims in the Consolidated Complaint.  To the contrary, Lead Plaintiffs and the Exchange Act Plaintiffs each litigated their respective lead plaintiff motions.  Thus, the kind of prejudice at issue in New Oriental is absent here.

In addition, in considering the statute of limitations, the New Oriental court was concerned "[t]he

14

potential repercussions for the abandoned class," because the options investors would not have been included in any class. Id. Here, all investors asserted to have Exchange Act claims are already members of the class asserted in the Consolidated Complaint. Specifically, both the Exchange Act class and the class asserted in the Consolidated Complaint consist of investors who purchased stock in the IPO. Compare Complaint ¶ 1 (defining class as investors who purchased common stock "in or traceable to the" IPO) with Exchange Act Complaint, Corneck v. Morgan Stanley & Co., LLC, No. 12 Civ. 4215 (defining Exchange Act class as investors "who purchased shares of Facebook Inc. . . . common stock pursuant to a registration statement and prospectus . . . issued in connection with the . . . IPO."). Accordingly, unlike in New Oriental, the Exchange Act Plaintiffs here are included in the Consolidated Securities Action and claims have been asserted on their behalf.

Moreover, if a parallel class action were to be permitted, both actions would therefore seek recovery for the same absent class members. A judgment in either class action would preclude further litigation of the other, and the Exchange Act Plaintiffs and the Lead Plaintiffs would thus necessarily be in destabilizing competition to race to an early resolution. See Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 110 (2d Cir.

15

2000) (explaining the "well-established rule that a plaintiff
cannot avoid the effects of res judicata by 'splitting' his
claim into various suits, based on different legal theories
(with different evidence 'necessary' to each suit)"); see also
Cieszkowska v. Gray Line N.Y., 295 F.3d 204, 205 (2d Cir. 2004)
("Even claims based upon different legal theories are barred
provided they arise from the same transaction or occurrence.")
(internal quotation marks omitted). Such conflicts are avoided
by having Lead Plaintiffs control a single consolidated action
on behalf of a unitary putative class.

The Exchange Act Plaintiffs assert that in their yet-
to-be filed amended complaint they would seek to represent a
broader class of plaintiffs that would include investors who
purchased Facebook stock on "private exchanges." (Pl. Memo. at
1-2 n.2). They do not themselves claim to have purchased on
private exchanges, nor does the class defined in the complaints
they have already filed reach purchasers on private exchanges.
But in any event, as this Court has noted, variations in class
definition do not defeat consolidation or justify a
proliferation of overlapping classes. See In re Facebook, 288
F.R.D. at 35 (consolidation of "putative class actions that seek
relief on behalf of similar classes" is appropriate (emphasis
added)). The Exchange Act Plaintiffs cannot displace Lead

16

Plaintiffs from their leadership role by laying claim to
representation of a supposedly more inclusive class. Lead
plaintiffs "necessarily make[] determinations that limit the
class of shareholders.  Inevitably, any class definition
establishes boundaries as to who may recover" as
part of the class. BoA II, 2011 WL 4538428, at *2.

     Lastly, the Exchange Act Plaintiffs will not suffer
any prejudice if they are not permitted to bring their own
separate class action.  The Exchange Act Plaintiffs remain free
to pursue their claims through an individual action, which would
permit them to obtain a ruling on the merits of their claims.
See BoA I, 2010 WL 4138980, at *1-2; BoA II, 2011 WL 4538428, at
*2.  While the Exchange Act Plaintiffs argue that they will
suffer prejudice unless they are permitted to bring a separate
class action because "discovery [on their Exchange Act claims]
cannot even begin until the allegations of the Consolidated
Complaint are finally adjudicated" (Pl. Memo. at 6), filing an
individual suit will provide them access to any discovery taken
by Lead Plaintiffs in the Consolidated Securities Action, at the
same time the Lead Plaintiffs receive it.  Therefore, no
potential prejudice exists to either the Lead Plaintiffs or the
Exchange Act Plaintiffs.

17

## IV.   Conclusion

Based upon the conclusions set forth above, the Exchange Act Plaintiffs' motion to sever is denied.


It is so ordered.


New York, NY
August   , 2013

ROBERT W. SWEET
U.S.D.J.